## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**LUSIK USOYAN**                                        :
c/o Bregman, Berbert, Schwartz & Gilday, LLC           :
7315 Wisconsin Ave., Suite 800 West                    :
Bethesda, Maryland 20814                               :
                                                       :
**JOHN DOE I**                                         :
c/o Bregman, Berbert, Schwartz & Gilday, LLC           :
7315 Wisconsin Ave., Suite 800 West                    :
Bethesda, Maryland 20814                               :
                                                       :
**LACY MACAULEY**                                      :
c/o Bregman, Berbert, Schwartz & Gilday, LLC           :
7315 Wisconsin Ave., Suite 800 West                    :
Bethesda, Maryland 20814                               :
                                                       :
**JOHN DOE II**                                        :
c/o Bregman, Berbert, Schwartz & Gilday, LLC           :
7315 Wisconsin Ave., Suite 800 West                    :
Bethesda, Maryland 20814                               :
                                                       :
**MEHMET YUKSEL**                                      :
c/o Bregman, Berbert, Schwartz & Gilday, LLC           :
7315 Wisconsin Ave., Suite 800 West                    :
Bethesda, Maryland 20814                               :
                                                       :
     Plaintiffs,              :
                                                       :
v.                                                     :    Civil Case No.: _____
                                                       :
**THE REPUBLIC OF TURKEY**                             :
c/o Turkish Ministry of Foreign Affairs                :
Dr. Sadık Ahmet Cad.                                   :
No:8 Balgat / Ankara, Turkey 06100                     :
                                                       :
     Defendant.               :
.............................................................:

### COMPLAINT

COME NOW, Plaintiffs, by and through undersigned counsel, and for their Complaint

against the Defendant, state as follows:

INTRODUCTION

1.     This action arises from the brutal attacks perpetrated by Defendant's employees, officers, and agents on May 16, 2017, outside of the Turkish Chief of Mission Residence in Washington, D.C. (hereinafter "Turkish Residence") against Plaintiffs who were peacefully protesting the policies and practices of the Republic of Turkey's governing authorities, in particular the actions of Turkey's strongman leader, President Recep Tayyip Erdoğan. Manifesting their contempt for the physical safety of Plaintiffs, free speech, and American civil rights, Defendant's employees, officers, and agents ordered and carried out the beating of Plaintiffs participating in a lawful protest. By terrorizing American demonstrators through the use of extreme violence, Defendant sent a clear message to protesters in the United States, Turkey, and throughout the world, that anyone who has the temerity to oppose President Erdoğan shall face arbitrary beatings, or worse. After all, if President Erdoğan and his minions can brutalize United States citizens legally assembled in protest on United States soil, what would he inflict on his own citizens within the control of the Turkish security apparatus?

2.     Accordingly, Defendant's violent attacks against Plaintiffs and other peaceful protestors are acts of "international terrorism" as defined by 18 U.S.C. § 2331. The attacks "involve[d] violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State," "appear to be intended to intimidate or coerce a civilian population," and "transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum," therefore federal law provides this Court with jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1605B.

3.      Additionally, federal law provides a cause of action subject to treble damages for harms suffered by U.S. national Plaintiffs. 28 U.S.C. § 1605B(c); 18 U.S.C. § 2333.

4.      For many years President Erdoğan has used the cover of "rule by decree" to execute a ferocious crackdown aimed at eliminating any real or perceived political opposition. The Erdoğan regime imposes arbitrary bans on public assemblies and uses violence to disperse peaceful demonstrators. Demonstrations not explicitly approved by authorities can lead to arrest. Security forces routinely detain individuals based on scant or secret evidence and on politically motivated grounds. Acts of torture, specious detentions, and ill-treatment of persons in police custody, such as beating and stripping detainees, use of prolonged stress positions, and threats of rape, as well as threats to lawyers and interference with medical examinations, are ways in which the Erdoğan regime punishes anyone who protests President Erdoğan or his policies. Without due process of law, and with the extensive use of terrorizing violence to cower the Turkish population, the notion of civil rights and legal protections are simply non-existent in Turkey, and particularly so for any individual or community that becomes a target of the Erdoğan regime.  On May 16, 2017, Defendant's employees, officers, and agents carried out this policy on American soil; in violation of American law.

5.      President Erdoğan's crackdown is meant to embolden his supporters and to terrorize, intimidate and repress his opponents. In Turkey, democracy activists and minority communities, particularly Kurds, live under a credible fear of persecution. The Erdoğan regime, and the extremist elements in Turkish society aligned with it, rely on violence and state sanctioned discrimination to deny fundamental democratic liberties and to curb political dissent. Under the notorious Article 301 of the Turkish Penal Code, criminal charges are brought for insulting Turkey, the Turkish Nation, or Turkish government institutions. Private citizens may

3

initiate charges under Article 301. The recent Decree Law No. 696 further polarizes Turkish society by offering immunity from legal, administrative, financial and penal responsibilities to private citizens who "suppress terrorist acts." This decree offers immunity to individuals, and notably, government aligned paramilitary groups, that attack private citizens and protestors who have become targets of the Erdoğan regime.

6.     The Erdoğan regime reacts with especial ferocity to any opposition or protest emanating from inside the United States. Many in Erdoğan's government and many pro-Erdoğan newspapers blame the United States government for the July 2016 coup attempt in Turkey and believe the United States is harboring individuals who masterminded and lent support to the coup, which the United States government denies.

7.     The Erdoğan regime has detained and deported U.S. citizens in Turkey without allowing access to lawyers or family members, and routinely refuses to grant consular access to detained U.S. citizens who also possess Turkish citizenship.

8.     The beating of Plaintiffs by the Defendant, the Erdoğan regime and its employees, officers, and agents was not an isolated incident, but rather one component of a campaign to suppress civil discourse, and illustrates how the Erdoğan regime and Turkish nationalists, through pattern and practice, intentionally commit violent acts of hate, hostility, abuse, and invidious discrimination against individuals and targeted minority groups attempting to exercise their inalienable democratic liberties, even if that exercise of liberty is occurring in the diplomatic center of the capital of the United States of America.

9.     Unlike the Erdoğan regime's abuses within Turkey, this attack on lawful protestors occurred on United States' soil, and subjects Turkey and its agents to criminal and civil liability under U.S. rule of law.

4

Plaintiffs state the following in support of their Complaint:

## Jurisdiction and Venue

10.     Jurisdiction over the subject matter of this case arises under 28 U.S.C. §§ 1330(a), 1331, 1332(a)(2), 1605(a)(1), 1605(a)(5), 1605B, and 42 U.S.C. § 1985.

11.     The Court exercises *in personam* jurisdiction over the Defendant in accordance with the provisions of the Foreign Sovereign Immunities Act, including 28 U.S.C. § 1330(b), 1605(a)(1), 28 U.S.C. §§ 1605(a)(5), 1605B and under the D.C. long arm statute, codified at D.C. Code § 13-423(a)(3), for tortious acts committed inside the District of Columbia.

12.     Venue in this Court is proper in accordance with the provisions of 28 U.S.C. §§ 1391(b)(2), 1391(f)(1), and 1391(f)(4), which provides, in pertinent part, that a civil action against a foreign state may be brought in the United States District Court for the District of Columbia.

## The Parties

### A.  Plaintiffs

13.     Lusik Usoyan is a natural person, a citizen of the United States of America, and a resident of the Commonwealth of Virginia. Lusik Usoyan can sue and be sued in this Court.

14.     John Doe I is a natural person, a national of Turkey, and a legal resident of the Commonwealth of Virginia. John Doe I can sue and be sued in this Court.

15.     John Doe II is a natural person, a citizen of the United States of America, and a resident of the State of Maryland. John Doe II can sue and be sued in this Court.

16.     Lacy MacAuley is a natural person, a citizen of the United States of America, and a resident of the District of Columbia. Lacy MacAuley can sue and be sued in this Court.

17.     Mehmet Yuksel is a natural person, a citizen of Denmark, and a legal resident of the Commonwealth of Virginia. Mehmet Yuksel can sue and be sued in this Court

**B. Defendant**

18.     Defendant, the Republic of Turkey, is a foreign state.

### The May 16, 2017 Attack Of Lusik Usoyan, John Doe I, And John Doe II

19.     On May 16, 2017, Plaintiffs Usoyan and Doe I assembled outside of the White House near the 1600 block of Pennsylvania Avenue, N.W, adjacent to Lafayette Square, while President Erdoğan visited the White House to meet with U.S. President Donald Trump.

20.     Plaintiffs Usoyan and Doe I gathered with other anti-Erdoğan protesters to express their opposition to President Erdoğan's treatment of Turkey's Kurdish minority, which minority is believed to number between 10% and 15% of the Turkish population, and President Erdoğan's foreign policy towards the Kurdish minorities living in Iran, Iraq and Syria.

21.     In anticipation of the protest, the anti-Erdoğan protesters obtained a valid permit from the U.S. National Park Service on May 4, 2017.

22.     The anti-Erdoğan protesters, including Usoyan and Doe I, peacefully demonstrated outside of the White House while President Erdoğan met with President Trump. After President Erdoğan's meeting with President Trump concluded, President Erdoğan traveled to the Turkish Residence.

23.     Usoyan, Doe I, and several other anti-Erdoğan protesters decided to protest across from the Turkish Residence within Sheridan Circle, a public space in the District of Columbia where protests are constitutionally protected, to continue to voice their opposition to the Turkish President, and his government's policies. They sought to peacefully exercise their rights under American law.

6

24.     Approximately twenty anti-Erdoğan protesters, including Usoyan, Doe I, and Doe II had gathered in the vicinity of Sheridan Circle in anticipation of President Erdoğan's arrival at the Turkish Residence.  The anti-Erdoğan protesters were carrying signs and chanting with the use of bullhorns.  Some of the signs advocated for the release of Selahattin Demirtaş, the imprisoned leader of the Turkish pro-Kurdish People's Democratic Party, or HDP.  Others carried red, yellow, and green (Kurdish national colors that are banned in Turkey) flags and scarves to indicate their support.

25.     In retaliation for the lawful anti-Erdoğan protest, Defendant, through its employees, officers, and agents, conspired to violently and recklessly attack the protesters, including Plaintiffs Usoyan, Doe I and Doe II, threaten their lives, and inflict bodily injury.  Upon information and belief, President Erdoğan directed and other employees, officers and agents participated in this conspiracy.

26.     Upon information and belief, Turgut Akar, Ismail Dalkiran, Servet Erkan, Tugay Erkan, Ahmet Karabay, Feride Kayasan, Mustafa Murat Sumercan, Gokhan Yildirim, Ismail Ergunduz, Mehmet Sarman, Hamza Yurteri, Sinan Narin, Eyup Yildirim, Mahmut Sami Ellialti, Ahmet Cengizhan Dereci, Muhsin Kose, Yusuf Ayar, Harrettin Eren, and other persons whose identities are currently unknown gathered on the Turkish Residence sidewalk before a Metropolitan Police Department ("MPD") police cordon line near the 1600 block of 23rd Street N.W., which stood between the Turkish Residence and the legally assembled protesters who were across the street from the Turkish Residence at all times.  In addition to MPD, there were also U.S. Secret Service officers present.

27.     Upon information and belief, Turgut Akar, Ismail Dalkiran, Servet Erkan, Tugay Erkan, Ahmet Karabay, Feride Kayasan, Mustafa Murat Sumercan, Lutfu Kutluca, Yusuf Afar,

Muhsin Kose and Gokhan Yildirim are all Turkish security officials who were each dressed in a suit and tie, and had earpieces that allowed them to communicate with each other and with other members of President Erdoğan's security team.   Many of these individuals were carrying firearms.

28.     Upon information and belief, Ismail Ergunduz, Mehmet Sarman, Hamza Yurteri and Harrettin Eren are all Turkish paramilitary working for Defendant who are also members of President Erdoğan's security team, and were dressed in khaki pants, olive green military-style jackets and combat boots. Many of these individuals were carrying firearms.

29.     The principal goals and purposes of Defendant's conspiracy was to assault and attack protestors who were assembled in front of the Turkish Residence in Sheridan Circle to silence their protest, to chill further protests against President Erdoğan and his regime in both the United States and Turkey, to deprive the protestors of their civil rights established under United States law and to hinder the protestors from equal protection of the laws of the United States.

30.     The members and associates of the conspiracy were predominantly employees or officers of Defendant:  Turkish security personnel, Turkish paramilitary, and staff members from the Turkish diplomatic delegation. The employees and officers of the Turkish government acted under the direction of President Erdoğan or senior members of the security team that traveled with President Erdoğan from Turkey.

31.     The Turkish security personnel and paramilitary members named in paragraphs 27 and 28 were joined by a variety of other pro-Erdoğan supporters and co-conspirators, including but not limited to the following individuals, Sinan Narin and Eyup Yildirim, who are United States citizens, and Mahmut Sami Ellialti and Ahmet Cengizhan Dereci, who are

8

Canadian citizens.  There were additional co-conspirators whose names are not currently known to the Plaintiffs.

32.    The members and associates of the conspiracy significantly outnumbered the anti-Erdoğan protesters, by a margin of approximately two to one, were armed, were significantly more physically imposing and capable than the anti-Erdoğan protesters, and upon information and belief, were trained in lethal combat.

33.    At approximately 4:05 p.m., Turkish government employees Mehmet Sarman, Mahmut Sami Ellialti, Ismail Ergunduz, Gokhan Yildirim, and Hamza Yurteri, who were joined by Sinan Narin, Eyup Yildirim, and other persons whose identities are currently unknown, ignored the MPD cordon which had been protecting the Plaintiffs' lawful protest and rushed toward the collective group of anti-Erdoğan protesters, who were in the street and on the sidewalk and commenced an initial assault on the protesters.

34.    Between approximately 4:05 p.m. and 4:13 p.m., Turkish government employee Mustafa Murat Sumercan made and directed a throat-slashing motion toward the protesters by moving his hand horizontally across his throat with his palm facing down.

35.    Between approximately 4:05 p.m. and 4:13 p.m., Mustafa Murat Sumercan angrily motioned at the anti-Erdoğan protesters to come over to the sidewalk in front of the Turkish Residence.

36.    Between approximately 4:06 p.m. and 4:08 p.m., Turkish government employees Gokhan Yildirim, Turgut Akar, Mustafa Murat Sumercan, and other persons whose identities are presently unknown bumped up against MPD officers at the cordon line, as one MPD officer exclaimed, "They have a right to talk" (referring to the anti-Erdoğan protesters).

37.     At approximately 4:06 p.m., Gokhan Yildirim told an MPD officer, referring to the protesters, "You need to take them; if you don't, I will."

38.     At approximately 4:06 p.m., Sinan Narin began to scream at an MPD officer, yelling that the Turkish security officials were there to protect President Erdoğan.

39.     At approximately 4:08 p.m., Eyup Yildirim yelled at an MPD officer and warned the officer of potential violence if the protestors continued their protest, and shouted that the anti-Erdoğan protesters were "dirty bastards."

40.     At approximately 4:10 p.m., Turkish government employee Gokhan Yildirim told a U.S. Secret Service officer, referring to the protesters, "We are waiting you to take them out, because President [Erdoğan] is coming. If you don't take, I will take. Okay?"

41.     At approximately 4:11 p.m., Eyup Yildirim shouted at one of the anti-Erdoğan protesters, "Shut the fuck up, bitch!"

42.     At approximately 4:11 p.m., the pro-Erdoğan supporters began to play music on a loudspeaker. The music was the "mehter march," which is a Turkish nationalist song.

43.     At approximately 4:12 p.m., Sinan Narin approached an MPD officer, exclaiming, "My President is coming and you guys aren't doing anything."

44.     Between approximately 4:05 p.m. and 4:13 p.m., Turkish government employees Muhsin Kose, Yusuf Ayar, Feride Kayasan, Ahmet Karabay, and other persons whose identities are currently unknown communicated with one another via earpieces.

45.     At approximately 4:13 p.m., after the aforementioned verbal confrontation between the groups and continued demonstration by the anti-Erdoğan protesters, during which MPD created a physical barrier to separate the two groups and restrain the members and associates of the conspiracy, the members and associates of the conspiracy rushed the anti-

10

Erdoğan protesters in a nearly simultaneous, coordinated throng. The members and associates of the conspiracy crossed a street and breached the police cordon to attack the protesters.

46.     Turkish government employees Turgut Akar, Ismail Dalkiran, Servet Erkan, Tugay Erkan, Ahmet Karabay, Feride Kayasan, Mustafa Murat Sumercan, Gokhan Yildirim, Ismail Ergunduz, Mehmet Sarman, Hamza Yurteri, Mahmut Sami Ellialti, Ahmet Cengizhan Dereci, Harrettin Eren, and other persons whose identities are presently unknown viciously pushed through the MPD cordon, crossed the street into Sheridan Circle, and commenced a second assault on the anti-Erdoğan protesters.

47.     The coordinated attack overwhelmed the MPD presence, and thereby prevented law enforcement from protecting the anti-Erdoğan protesters from bodily injury or ensuring their rights to protest.

48.     The members and associates of the conspiracy used threats and physical violence – savagely kicked and attacked the protesters to dispel the anti-Erdoğan protesters, and blatantly ignored MPD commands to cease the violence.

49.     The members and associates of the conspiracy attacked the anti-Erdoğan protesters because of the protesters' opposition to President Erdoğan, the protestors' support of the HDP and the protestors' support of ethnic Kurds, and because the conspirators believed that the protesters were ethnically Kurdish.

### Role of President Erdoğan

50.     Between approximately 4:10 p.m. and 4:13 p.m., before the attackers rushed the anti-Erdoğan protestors, President Erdoğan arrived at the Turkish Residence in a black car.

51.     At this time, the anti-Erdoğan protesters were protesting lawfully in Sheridan Circle, across the street from the Turkish Residence, and were protected by the MPD cordon.

11

52.     Pro-Erdoğan supporters were standing on the other side of Sheridan Circle, with a public street and an MPD cordon between them and the anti-Erdoğan protestors.

53.     At approximately 4:13 p.m., as President Erdoğan was stepping out of the back seat of his car, he spoke directly to his head of security, Muhsin Kose, and, upon information and belief, ordered him to mobilize an attack on the anti-Erdoğan protestors.

54.     Immediately thereafter, in a simultaneous and coordinated throng, various members of the conspiracy rushed towards and violently and recklessly attacked Usoyan, Doe I, Doe II and the other anti-Erdoğan protesters.

55.     Various videos of the incident capture members of Erdoğan's security detail repeating the phrase "dalin diyor", which is Turkish for "he says attack."

56.     Upon information and belief, Erdoğan and Kose observed the attack and continued to communicate with the other Turkish security personnel during the attack.

57.     Erdoğan calmly oversaw the violence as the bulk of his security detail had left his side to carry out the attack. At no time did Erdoğan intervene to terminate the attack.

58.     Erdoğan was never placed in any danger or apprehension of danger from the protestors.

59.     While the attack was ongoing, Erdoğan calmly and slowly left the area surrounding his car and entered the Turkish Residence.

### Conspirators' Attack on Lusik Usoyan

60.     At approximately 4:13 p.m. or soon thereafter, Turkish government employees Hamza Yurteri, Mehmet Sarman, Mahmut Sami Ellialti, who were joined by Sinan Narin, Eyup Yildirim and other persons whose identities are currently unknown rushed toward and repeatedly

kicked, punched and otherwise battered anti-Erdoğan protester Lusik Usoyan's head and body causing Lusik Usoyan to lose consciousness.

61.     Lusik Usoyan was protesting lawfully at the time of the attack and was unarmed. She is approximately 5'6" tall and weighs approximately 120 pounds.

62.     The extreme violence of the attack, such that Usoyan was knocked out cold, demonstrates the hateful recklessness of the attack and the violent intention to cause severe bodily harm.

63.     Turkish government employees Hamza Yurteri, Mehmet Sarman, and Mahmut Sami Ellialti assaulted Lusik Usoyan with a dangerous weapon, combat boots. Kicks to the head can easily kill a person and Usoyan's attackers had military training.

64.     Turkish government employees Hamza Yurteri, Mehmet Sarman, and Mahmut Sami Ellialti continued to kick Lusik Usoyan after she was on the ground, lying motionless and unconscious.

65.     Turkish government employees Hamza Yurteri, Mehmet Sarman, and Mahmut Sami Ellialti knowingly and purposefully and with hateful intent caused serious bodily injury to Lusik Usoyan.

66.     Turkish government employees Hamza Yurteri and Mehmet Sarman are Turkish paramilitary, and were wearing combat boots when they kicked Lusik Usoyan.

67.     United States citizens, Sinan Narin and Eyup Yildirim, participated in the attack against Lusik Usoyan.

68.     During the unprovoked attack, Usoyan suffered a concussion, as well as bruising and swelling on her head, face and elbow.

13

69.    Since the attack, Usoyan has suffered and continues to suffer from memory loss, dizziness, depression, loss of appetite, loss of sleep, mood swings and other concussion related symptoms.

70.    In addition, Usoyan has been verbally attacked and threatened online since the attack because she has been recognized as an anti-Erdoğan protester.

71.    Usoyan is undergoing continuing care as a result of her injuries.

72.    Moreover, since the attack, Usoyan's relationship with her husband, Mehmet Yuksel, has been negatively impacted.

73.    As a result of the attack, Usoyan and Yuksel have each suffered from loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of their marital relationship.

### Conspirators' Attack on John Doe I

74.    At approximately 4:13 p.m. or soon thereafter, Harrettin Eren and another person whose identity is presently unknown assaulted anti-Erdoğan protester John Doe I, kicking him in the lower back and face.

75.    John Doe I was protesting lawfully at the time of the attack, and was unarmed. John Doe I is approximately 6'0" tall and weighs approximately 170 pounds.

76.    Harrettin Eren assaulted John Doe I with a dangerous weapon, combat boots. Eren is Turkish paramilitary, and upon information and belief had military training, and was wearing combat boots when he kicked John Doe I.

77.    Harrettin Eren unlawfully assaulted and threatened John Doe I in a menacing manner.

14

78.     During the attack, John Doe I was kicked in the head, face and back, and he suffered bruising and swelling on his face and back.  Kicks to the head can easily kill a person.

79.     Since the attack, John Doe I has suffered from chronic pain in his head, face, knees, shoulder, and back as a result of being kicked while he was lying on the ground, as well as PTSD, anxiety, depression, loss of sleep, nightmares, and loss of productivity at work.

80.     John Doe I is undergoing continuing care as a result of his injuries.

81.     Prior to the attack, John Doe I received financial aid from the Turkish Ministry of National Education to assist John Doe I in his pursuit of a Ph.D.  Shortly after the attack, the Turkish Ministry of National Education rescinded its financial aid and has begun collection efforts to recover the financial aid that it previously granted.

### Conspirators' Attack on John Doe II

82.     At approximately 4:13 p.m. or soon thereafter, certain conspirators threatened and chased John Doe II.

83.     John Doe II was protesting lawfully at the time of the attack and was unarmed. John Doe II is approximately 5'6" tall and weighs approximately 150 pounds.

84.     At approximately 4:13 p.m. or soon thereafter, an unknown conspirator kicked John Doe II in the leg.

85.     Around this time, John Doe II's cellular phone was knocked from his hand, causing the phone to break.

86.     Since the attack, John Doe II has suffered from sleep disorders, nightmares, and depression, and was diagnosed with post-traumatic stress disorder, for which he has been prescribed medication.

87.     John Doe II is undergoing continuing care as a result of his injuries.

15

## Conspirators' Attack on Lacy MacAuley

88.     Lacy MacAuley was not present during the anti-Erdoğan protests described herein at the White House or at Sheridan Circle.

89.     Being aware of the aforementioned protests, however, MacAuley created an anti-Erdoğan protest sign and walked from her house towards the Turkish Embassy, which was Erdoğan's next scheduled stop after the Turkish Residence, to protest.

90.     Before she reached the Turkish Embassy, MacAuley reached a police perimeter, where she stood with her sign.  Thereafter, a group of individuals emerged from a van that was part of President Erdoğan's motorcade as it traveled to the Turkish Embassy on Massachusetts Avenue and rushed towards MacAuley, who was standing on a public sidewalk across from the Turkish Embassy.

91.     At approximately 6:17 p.m. or soon thereafter, Feride Kayasan rushed toward MacAuley and aggressively grabbed MacAuley's hand as MacAuley peacefully protested.

92.     At approximately 6:17 p.m. or soon thereafter, Feride Kayasan, Lutfu Kutluca, Tugay Erkan and another person whose identity is presently unknown surrounded MacAuley in a menacing manner.

93.     At approximately 6:17 p.m. or soon thereafter, a person whose identity is currently unknown, but who was dressed in a uniform similar to Feride Kayasan, grabbed MacAuley's anti-Erdoğan sign from her, crumpled it up, and threw it aside.

94.     At approximately 6:17 p.m. or soon thereafter, Feride Kayasan placed her hand over MacAuley's mouth in an attempt to silence MacAuley.

95.     Tugay Erkan, Feride Kayasan and Lutfu Kutluca unlawfully assaulted and threatened MacAuley in a menacing manner.

16

96.     Lacy MacAuley was protesting lawfully and was unarmed at the time of the assault. She is approximately 5'3" tall and weighs approximately 105 pounds.

97.     These assaults occurred as a result of the actual or perceived political affiliation of MacAuley.

98.     Since the attack, MacAuley has suffered from loss of sleep, as well as increased sadness and anxiety.

99.     MacAuley is undergoing continuing care as a result of her injuries.

### President Erdoğan's Security Detail's Penchant for Violent Attacks

100.    The aforementioned attacks, perpetrated by President Erdoğan's security and the other various co-conspirators, were not the first attacks on lawful protesters of this kind.

101.    In September of 2011, Erdoğan's security detail started a fight with United Nations security guards that left one guard hospitalized during the United Nations General Assembly session in New York.

102.    On February 4, 2016, Erdogan's security detail violently assaulted and ejected three protestors during a speech given by President Erdoğan in Quito, Ecuador. A member of the Ecuadorean National Assembly was injured while trying to protect the protestors.

103.    On March 31, 2016, during a prior visit to Washington, D.C., President Erdoğan's security detail harassed journalists and assaulted and battered protesters who were gathered outside of an event at the Brookings Institute.

104.    Moreover, following the attack which gives rise to the allegations in this Complaint, there was another attack on several protestors while Erdoğan was giving a speech at the Marriott Marquis hotel in New York, NY. Protesters were pushed and punched by a variety of individuals after standing to voice their opposition to Erdoğan and his policies.

17

105.    These incidents demonstrate an utter disregard and disrespect for American democratic values and constitutional liberties. President Erdoğan and his security detail stand in stark contrast to the thousands of visiting dignitaries received in the United States each year, by virtue of their habit and pattern of violent and hostile behavior against democratic expressions of opposition and protest.

106.    These incidents also demonstrate a systematic pattern of attempts to intimidate protestors, a civilian population, and prevent their exercise of free speech and other rights under the U.S. Constitution.

### Criminal Indictment Against Co-Conspirators

107.    On August 29, 2017, Turgut Akar, Ismail Dalkiran, Servet Erkan, Tugay Erkan, Ahmet Karabay, Feride Kayasan, Lutfu Kutluca, Mustafa Murat Sumercan, Gokhan Yildirim, Ismail Ergunduz, Mehmet Sarman, Hamza Yurteri, Muhsin Kose, Yusuf Ayar and Harrettin Eren, and their co-conspirators, Sinan Narin, Eyup Yildirim, Mahmut Sami Ellialti and Ahmet Cengizhan Dereci were indicated by a grand jury and charged with conspiracy, assault with a dangerous weapon, aggravated assault, assault with significant bodily injury and simple assault, each of which was classified as a hate crime because the acts demonstrated prejudice against the perceived ethnicity and political affiliation of the victims.

108.    Narin and Yildirim were previously detained and remain in detention as of the filing of this Complaint.

109.    On December 21, 2017, Narin and Yildirim pled guilty to felony assault.

110.    While they were incarcerated, Narin and Yildirim were visited by the Turkish Minister of Foreign Affairs, Foreign Minister Mevlüt Çavuşoğlu, who showed support for, and posed for photos with, these men who have pled guilty to felony assault.

18

111.    Narin and Yildirim are publicly heralded as heroes by the Erdoğan regime and are being celebrated by Turkish nationalists for their attacks against the anti- Erdoğan protestors.

112.    Charges against Turgut Akar, Tugay Erkan, Feride Kayasan, Lutfu Kutluca, Mustafa Murat Sumercan, Gokhan Yildirim, Ismail Ergunduz, Hamza Yurteri, Muhsin Kose, Yusuf Ayar and Harrettin Eren were dismissed by the United States government, without prejudice.

113.    Charges remain pending against Ismail Dalkiran, Servet Erkan, Ahmet Karabay, Mehmet Sarman, Mahmut Sami Ellialti and Ahmet Cengizhan Dereci.

114.    Bench warrants have been issued for Ismail Dalkiran, Servet Erkan, Ahmet Karabay, Mehmet Sarman, Mahmut Sami Ellialti and Ahmet Cengizhan Dereci, but these individuals remain at large.

**COUNT I**
**ASSAULT**

115.    Plaintiffs Lusik Usoyan, John Doe I, John Doe II, and Lacy MacAuley, repeat, re-allege, and incorporate by reference each and every allegation set forth above as if fully set forth herein.

116.    Defendant's employees, officers, and agents acted intentionally to cause harmful and offensive contact to Plaintiffs Lusik Usoyan, John Doe I, John Doe II, and Lacy MacAuley.

117.    Defendant's employees, officers, and agents acted in concert to intentionally put Plaintiffs Lusik Usoyan, John Doe I, John Doe II, and Lacy MacAuley in imminent apprehension of such harmful contact.

118.    Plaintiffs Lusik Usoyan, John Doe I, John Doe II, and Lacy MacAuley suffered physical, mental and emotional damages as a result of the intentional acts of the Defendant, through its agents, who were acting jointly and in concert.

119.    Plaintiffs' injuries and damages were caused solely and proximately by the reckless and intentional acts of Defendant's employees, officers, and agents.

**WHEREFORE**, Plaintiffs Lusik Usoyan, John Doe I, John Doe II, and Lacy MacAuley, demand judgment against Defendant in the amount of $10,000,000, each, and any other such relief as this Court deems just and necessary including treble damages, pre-judgment interest, punitive damages, costs, and attorneys' fees.

**COUNT II**
**BATTERY**

120.    Plaintiffs Lusik Usoyan, John Doe I, John Doe II, and Lacy MacAuley, repeat, re-allege, and incorporate by reference each and every allegation set forth above as if fully set forth herein.

121.    On May 16, 2017, Defendant's employees, officers, and agents including but not limited to Mehmet Sarman, Hamza Yurteri, Sinan Narin, Eyup Yildirim, and Mahmut Sami Ellialti punched and kicked Usoyan, causing Usoyan to lose consciousness.

122.    On May 16, 2017, Defendant's employees, officers, and agents including but not limited to Harrettin Eren and others attacked John Doe I, kicking him in his lower back and face.

123.    On May 16, 2017, Defendant's employees, officers, and agents including but not limited to Feride Kayasan, Lutfu Kutluca, Tugay Erkan and others surrounded MacAuley, grabbed her hand, grabbed and destroyed her anti-Erdoğan sign, and covered her mouth in an attempt to silence her.

124.    On May 16, 2017, Defendant's employees, officers, and agents attacked and kicked John Doe II in the leg and knocked his cellular phone from his hands.

20

125.    Defendant's employees, officers, and agents acted jointly and in concert with the intent to cause harmful and offensive contact to Plaintiffs Lusik Usoyan, John Doe I, John Doe II, and Lacy MacAuley, and such harmful and offensive contact occurred.

126.    As a direct consequence of the actions of the Defendant's employees, officers, and agents , Plaintiffs Lusik Usoyan, John Doe I, John Doe II, and Lacy MacAuley have suffered damages in the form of physical and emotional pain and suffering, mental distress and medical bills.

127.    Plaintiffs' injuries and damages were caused solely and proximately by the reckless and intentional acts of the Defendant's employees, officers, and agents.

**WHEREFORE**, Plaintiffs Lusik Usoyan, John Doe I, John Doe II, and Lacy MacAuley, demand judgment against Defendant in the amount of $10,000,000, each, and any other such relief as this Court deems just and necessary including treble damages, pre-judgment interest, punitive damages, costs, and attorneys' fees.

## COUNT III
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

128.    Plaintiffs Lusik Usoyan, John Doe I, John Doe II, Lacy MacAuley, and Mehmet Yuksel repeat, re-allege, and incorporate by reference each and every allegation set forth above as if fully set forth herein.

129.    Plaintiffs Lusik Usoyan, John Doe I, John Doe II, and Lacy MacAuley, were in the zone of physical danger which was created by the negligence of Defendant's employees, officers, and agents.

130.    As a result of the negligence of the Defendant's employees, officers, and agents, Plaintiffs Lusik Usoyan, John Doe I, John Doe II, and Lacy MacAuley feared for their own safety.

131.    Defendant's employees, officers, and agents acted jointly and in concert and had the effect of causing Plaintiffs Lusik Usoyan, John Doe I, John Doe II, and Lacy MacAuley serious and verifiable emotional distress.

132.    Plaintiffs' injuries and damages were caused solely and proximately by the negligent acts of Defendant's employees, officers, and agents.

**WHEREFORE**, Plaintiffs Lusik Usoyan, John Doe I, John Doe II, and Lacy MacAuley demand judgment against Defendant in the amount of $10,000,000, each, and any other such relief as this Court deems just and necessary including treble damages, pre-judgment interest, punitive damages, costs, and attorneys' fees.

**COUNT IV**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

133.    Plaintiffs Lusik Usoyan, John Doe I, John Doe II, Lacy MacAuley, and Mehmet Yuksel repeat, re-allege, and incorporate by reference each and every allegation set forth above as if fully set forth herein.

134.    Defendant's employees, officers, and agents attacked Plaintiffs Lusik Usoyan, John Doe I, John Doe II, and Lacy MacAuley, and such attack was extreme, outrageous and undertaken with the intent (or alternatively, was undertaken recklessly) to cause Plaintiffs severe emotional distress.

135.    Defendant's employees, officers, and agents acted jointly and in concert and had the effect of causing Plaintiffs Lusik Usoyan, John Doe I, John Doe II, Lacy MacAuley, and Mehmet Yuksel severe emotional distress.

136.    Plaintiffs' injuries and damages were caused solely and proximately by the reckless and intentional acts of Defendant's employees, officers, and agents.

**WHEREFORE**, Plaintiffs Lusik Usoyan, John Doe I, John Doe II, Lacy MacAuley, and Mehmet Yuksel demand judgment against Defendant in the amount of $10,000,000, each, and any other such relief as this Court deems just and necessary including treble damages, pre-judgment interest, punitive damages, costs, and attorneys' fees.

## COUNT V
## CIVIL CONSPIRACY

137.    Plaintiffs Lusik Usoyan, John Doe I, John Doe II, Lacy MacAuley, and Mehmet Yuksel repeat, re-allege, and incorporate by reference each and every allegation set forth above as if fully set forth herein.

138.    Defendant's employees, officers, and agents conspired to assault, batter and intentionally inflict emotional distress upon Plaintiffs Lusik Usoyan, John Doe I, John Doe II, Lacy MacAuley, and Mehmet Yuksel.

139.    Defendant's employees, officers, and agents' conspiracy resulted in overt acts which damaged Plaintiffs in the form of physical and emotional pain and suffering, mental distress and medical bills.

140.    Defendant's employees, officers, and agents damaged Plaintiffs Lusik Usoyan, John Doe I, John Doe II, Lacy MacAuley, and Mehmet Yuksel in furtherance of its scheme to assault, batter and intentionally inflict emotional distress upon Plaintiffs.

23

141.    Plaintiffs' injuries and damages were caused solely and proximately by the reckless and intentional acts of Defendant's employees, officers, and agents.

**WHEREFORE**, Plaintiffs Lusik Usoyan, John Doe I, John Doe II, Lacy MacAuley, and Mehmet Yuksel demand judgment against Defendant in the amount of $10,000,000, each, and any other such relief as this Court deems just and necessary including treble damages, pre-judgment interest, punitive damages, costs, and attorneys' fees.

**COUNT VI**
**CIVIL CLAIM FOR BIAS-RELATED CRIME – D.C. CODE § 22-3704**

142.    Plaintiffs Lusik Usoyan, John Doe I, John Doe II, and Lacy MacAuley, repeat, re-allege, and incorporate by reference each and every allegation set forth above as if fully set forth herein.

143.    Plaintiffs Lusik Usoyan, John Doe I, John Doe II, and Lacy MacAuley were each injured by the intentional acts of Defendant's employees, officers, and agents, which were perpetrated as a result of Defendant's and Defendant's employees, officers, and agents' prejudice against Plaintiffs' actual or perceived political affiliation.

144.    Plaintiffs' injuries and damages were caused solely and proximately by the reckless and intentional acts of Defendant's employees, officers, and agents.

**WHEREFORE**, Plaintiffs Lusik Usoyan, John Doe I, John Doe II and Lacy MacAuley demand judgment against Defendant in the amount of $10,000,000, each, and any other such relief as this Court deems just and necessary including treble damages, injunctive relief, pre-judgment interest, punitive damages, costs, and attorneys' fees.

## COUNT VII
### VIOLATION OF ANTI-TERRORISM ACT - 28 U.S.C. § 1605B(c); 18 U.S.C. 2333

145.    Plaintiffs Lusik Usoyan, John Doe I, John Doe II, and Lacy MacAuley, repeat, re-allege, and incorporate by reference each and every allegation set forth above as if fully set forth herein.

146.    Defendant, through Defendant's employees, officers, and agents, violently attacked Plaintiffs and other peaceful protestors in acts of "international terrorism" as defined by 18 U.S.C. § 2331.

147.    The attacks "involve[d] violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State," "appear to be intended to intimidate or coerce a civilian population," and "transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum," therefore federal law provides this Court with jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1605B.

148.    The attacks injured Plaintiffs Lusik Usoyan, John Doe I, John Doe II and Lacy MacAuley in their person and property, and Plaintiffs have suffered damages as a result.

**WHEREFORE**, Plaintiffs Lusik Usoyan, John Doe I, John Doe II and Lacy MacAuley demand judgment against Defendant in the amount of $10,000,000, each, plus treble damages in accordance with 18 U.S.C. 2333(a), and any other such relief as this Court deems just and necessary including injunctive relief, pre-judgment interest, punitive damages, costs, and attorneys' fees.

25

## COUNT VIII
## LOSS OF CONSORTIUM

149.     Plaintiffs Lusik Usoyan, and Mehmet Yuksel repeat, re-allege, and incorporate by reference each and every allegation set forth above as if fully set forth herein.

150.     Lusik Usoyan and Mehmet Yuksel were married at the time of the attack, and continued to be married.

151.     As a result of the wrongful, negligent, reckless and intentional acts of the Defendant's employees, officers, and agents, Plaintiffs Lusik Usoyan, and Mehmet Yuksel were caused to suffer, and will continue to suffer, loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of their marital relationship.

152.     Lusik Usoyan's and Mehmet Yuksel's injuries and damages were caused solely and proximately by the wrongful, negligent, reckless and intentional the acts of Defendant's employees, officers, and agents.

**WHEREFORE**, Plaintiffs Lusik Usoyan and Mehmet Yuksel demand judgment against Defendant in the amount of $10,000,000, each, and any other such relief as this Court deems just and necessary including treble damages, pre-judgment interest, punitive damages, costs, and attorneys' fees.

Respectfully submitted,

BREGMAN, BERBERT, SCHWARTZ & GILDAY, LLC

Douglas M. Bregman (D.C. Bar # 218354)
Andreas N. Akaras (D.C. Bar # 461481)
Stephen J. Whelan (D.C. Bar # 1010351)
7315 Wisconsin Avenue, Suite 800 West
Bethesda, MD 20814
Phone: (301) 656-2707
dbregman@bregmanlaw.com
aakaras@bregmanlaw.com
swhelan@bregmanlaw.com

PERLES LAW FIRM, P.C.

Steven R. Perles (D.C. Bar # 326975)
Edward MacAllister (D.C. Bar # 494558)
Joshua K. Perles (D.C. Bar # 1031069)
Emily Amick (D.C. Bar # 242018)
Perles Law Firm, PC
1050 Connecticut Avenue, NW
Suite 500
Washington, D.C. 20036
Phone: (202) 955-9055
sperles@perleslaw.com
emacallister@perleslaw.com